NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241550-U

NO. 4-24-1550

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 31, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BRADLEY WALTERS, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| THE DEPARTMENT OF CORRECTIONS, LATOYA | ) | No. 23MR250 |
| HUGHES, EDWIN BOWEN, JENNIFER DELANEY, | ) | |
| and MICHAEL LEATHERS, | ) | Honorable |
|     Defendants-Appellees. | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Harris and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly dismissed plaintiff's complaint where his requests for injunctive and declaratory relief were moot due to his transfer to another jail facility and his complaint otherwise failed to raise any cognizable claim.

¶ 2    In July 2023, plaintiff, Bradley Walters, filed a *pro se* complaint for declaratory relief, injunctive relief, and damages, alleging the Department of Corrections (DOC) was failing to enforce the provisions of the DOC county jail standards (standards) (20 Ill. Adm. Code 701) at the Winnebago County jail (Jail), where he was detained. The complaint named as defendants DOC; DOC's director, Latoya Hughes (we note former director, Rob Jeffreys, was replaced in these proceedings by Hughes by operation of law (see 735 ILCS 5/2-1008(d) (2024))); DOC's manager of the Jail and standards unit, Edwin Bowen; and standards unit inspectors Jennifer Delaney and Michael Leathers. In October 2023, defendants filed a motion to dismiss, which the trial court granted. The court later denied plaintiff's motion to reconsider. Plaintiff now appeals,

arguing the court erroneously granted defendants' motion to dismiss. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         In July 2023, plaintiff was an inmate at the Jail. At that time, he filed an action *pro se* against defendants. The pleading, which was styled as a "Complaint," generally requested declaratory relief, injunctive relief, and damages to redress harms he sustained due to standards violations caused by defendants' failure to enforce those standards at the Jail. According to plaintiff, the conditions at the Jail violated the standards for the following reasons: (1) failure to employ a sufficient number of staff for the Jail's functioning, (2) failure to provide detainees a property receipt following admission to the Jail, (3) failure to issue clothing to detainees twice weekly, (4) failure to provide haircuts or grooming equipment to indigent detainees, (5) failure to provide sufficient air ventilation, (6) failure to keep walls clear of graffiti or writing, (7) failure to provide towels to detainees, (8) failure to conduct a personal observation every 30 minutes, (9) failure to provide some inmates with access to books, (10) failure to provide adequate access to the law library and legal materials, (11) Jail staff profiting from the Jail's commissary system, (12) excessive prices of items in the commissary that exceeded those of local community stores, (13) use of commissary system profits for purposes other than for the benefit of detainees, and (14) failure to provide sufficient access to recreational facilities. Plaintiff claimed he exhausted his administrative remedies by filing a grievance relating to each standards violation but noted the Jail refused to "provide copies of local decisions."

¶ 5         In the "Legal Claim" section of his complaint, plaintiff generally asserted, without elaboration, as a result of the alleged standards violations, defendants violated his "first amendment right by denying him to petition [*sic*] the Government for a redress of grievances," his right to equal protection, and "state law." Accordingly, plaintiff sought the following relief: (1) a

- 2 -

declaration that the alleged acts "violate his rights"; (2) injunctive relief ordering defendants to conduct a full inspection of the Jail, repay the funds taken from the commissary system account, and enforce all standards on the Jail; (3) compensatory damages to redress the taking of funds from the commissary system profits; and (4) and punitive damages.

¶ 6 In October 2023, defendants filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2022)). Therein, defendants argued dismissal was appropriate under section 2-615 of the Code (*id.* § 2-615) because plaintiff failed to plead a cognizable claim for which relief could be granted and failed to sufficiently plead equal protection or first amendment violations. Defendants also argued dismissal was appropriate under section 2-619 of the Procedure Code (*id.* § 2-619) because (1) plaintiff lacked standing where section 3-15-2 of the Unified Code of Corrections (Unified Code) (730 ILCS 5/3-15-2(b) (West 2022)) granted exclusive enforcement authority of the standards to the director of DOC and created no private right to petition a court to enforce compliance with standards; (2) the facts established DOC fulfilled its obligations by maintaining the requisite standards; (3) to the extent plaintiff sought *mandamus* relief, he was not entitled to such relief because section 3-15-2 of the Unified Code granted DOC discretionary authority to inspect detention facilities; and (4) defendants were entitled to sovereign immunity. Additionally, defendants argued plaintiff failed to establish he had a likelihood of success on the merits or faced irreparable harm warranting injunctive relief.

¶ 7 In November 2023, while defendants' motion to dismiss was still pending, plaintiff was transferred to the Ogle County jail

¶ 8 In February 2024, plaintiff filed a response to defendants' motion to dismiss, asserting he had standing and sufficiently pleaded defendants violated the standards and his first

amendment and equal protection rights. In support of his first amendment claim, he raised the new assertions defendants conspired with the Jail to hinder his efforts to report violations of the standards by "dismiss[ing] them with no or limited investigation" and failing to provide detainees with copies of their grievances. As to his equal protection claim, he contended the conditions at the Lake County jail were better than at the Jail, such that "Inmates of the [Jail] are treated differently." He also noted, although defendants had, at a December 2023 hearing, broached the subject of the case having become moot because plaintiff no longer resided at the Jail, the trial court should reject that argument, as his transfer was an effort to evade his complaints.

¶ 9　　　　In May 2024, defendants filed a reply to plaintiff's response to their motion to dismiss. Therein, defendants realleged the arguments raised in their motion to dismiss, contending plaintiff presented no additional legal support, and further argued plaintiff's case was moot because although his suit concerned conditions at the Jail, he no longer resided there, having been transferred to the Ogle County jail.

¶ 10　　　　On July 25, 2024, the trial court granted defendants' motion to dismiss, concluding plaintiff lacked standing because section 3-15-2(b) of the Unified Code (*id.*) granted the director of DOC the exclusive right to petition a court to enforce the standards and provided no private cause of action. The court denied plaintiff's subsequent motion to reconsider.

¶ 11　　　　This appeal followed.

¶ 12　　　　　　　　　　　　　　　II. ANALYSIS

¶ 13　　　　On appeal, plaintiff argues the trial court erred in dismissing his complaint because it sufficiently raised cognizable claims. Defendants respond plaintiff's requests for injunctive and declaratory relief, as well as any request for *mandamus* relief, are moot because he seeks relief related exclusively to the Jail, where he no longer resides. They further contend he otherwise failed

to state any additional claims.

¶ 14    Section 2-619.1 of the Procedure Code (735 ILCS 5/2-619.1 (West 2022)) allows a defendant to combine a section 2-615 motion to dismiss (*id.* § 2-615) with a section 2-619 motion to dismiss (*id.* § 2-619). *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39. A motion to dismiss pursuant to section 2-615 "attacks the sufficiency of the complaint and raises the question of whether the allegations of the complaint, when viewed in the light most favorable to the nonmoving party, are sufficient to state a cause of action upon which relief can be granted." *Cebertowicz v. Madigan*, 2016 IL App (4th) 140917, ¶ 14. A motion to dismiss pursuant to section 2-619 "admits the legal sufficiency of the plaintiff's claim but asserts certain defects or defenses outside the pleadings that defeat the claim, such as an immunity from tort liability conferred by statute" or an issue becoming moot. *Dawkins v. Fitness International, LLC*, 2022 IL 127561, ¶ 24; *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 676-77 (2008); 735 ILCS 5/2-619(a)(9) (West 2022). Whether dismissal of a complaint is pursuant to section 2-615 or 2-619 of the Procedure Code, our review is *de novo*. *Walworth Investments-LG, LLC*, 2022 IL 127177, ¶ 40. We may affirm the grant of a motion to dismiss on any basis established by the record, regardless of the trial court's reasoning. *Süd Family Ltd. Partnership v. Otto Baum Co.*, 2024 IL App (4th) 220782, ¶ 41.

¶ 15    A. Plaintiff's Requests for Injunctive and Declaratory Relief

¶ 16    We first address defendants' mootness argument. Defendants contend plaintiff's transfer to the Ogle County jail has rendered the issues of injunctive and declaratory relief moot because any such relief relating to defendants' enforcement of the standards at the Jail would have no practical effect on plaintiff since he no longer resides there.

¶ 17    An issue is moot when no actual controversy exists or where events occur making

it impossible for the reviewing court to grant relief. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. " 'As a general rule, courts of review in Illinois do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided.' " *Id.* (quoting *In re Barbara H.*, 183 Ill. 2d 482, 491 (1998)). As a matter of justiciability, mootness is not a mere technicality; the existence of a real, actual controversy is a prerequisite to the exercise of our jurisdiction. *In re Adoption of Walgreen*, 186 Ill. 2d 362, 365 (1999).

¶ 18        Here, plaintiff's request for injunctive and declaratory relief related exclusively to defendants' alleged failure to ensure the Jail, where he resided at the time he filed his complaint, adhered to the standards. However, the record indicates plaintiff has been transferred from the Jail to the Ogle County jail, and he makes no effort to establish he is likely to return to the Jail. "When an inmate is transferred to another prison, a claim of injunctive relief against an official at the first prison is moot unless the inmate demonstrates that he is likely to be transferred back to the former facility." *Murillo v. Page*, 294 Ill. App. 3d 860, 867 (1998). Thus, because plaintiff is no longer housed at the Jail, any relief relating to the defendants' enforcement of the standards there would have no practical effect upon him. Accordingly, plaintiff's request for injunctive and declaratory relief is moot. *Id.*; see *Wilborn v. Jeffreys*, 2023 IL App (4th) 210216-U, ¶¶ 15, 18 (noting the mootness inquiry focuses not on the various legal theories advanced, such as *mandamus*, declaratory relief, or equal protection, but whether success on any of them can provide effective relief).

¶ 19        We also agree with defendants that, to the extent the complaint can be interpreted to also seek *mandamus* relief, the same conclusion applies, as such relief, like injunctive relief, amounts to a request that this court direct defendants to enforce the standards. See *People ex rel.*

*Birkett v. Konetski*, 233 Ill. 2d 185, 192-93 (2009) ("*Mandamus* is an extraordinary remedy to enforce the performance by a public officer of nondiscretionary official duties."); see also *Luczak v. Thompson*, 2024 IL App (5th) 230392-U, ¶ 22 (applying the principle of mootness to a *mandamus* action and noting the specific application of mootness to cases "brought by inmates who have been released or transferred from the facility in which the basis of their claims occurred").

¶ 20        As plaintiff's requests for injunctive and declaratory relief—and any potential claim for *mandamus* relief—pertained exclusively to the enforcement of the standards at the Jail, a facility where plaintiff no longer resides and is not likely to return, we conclude the issues of injunctive, declaratory, and *mandamus* relief are moot.

¶ 21                    B. Plaintiff's Request for Monetary Damages

¶ 22        Our foregoing conclusion notwithstanding, an award of monetary damages is not necessarily mooted by plaintiff's transfer to another facility. Here, plaintiff sought compensatory damages to redress the taking of funds from the inmate commissary system account. He also generally sought punitive damages in the amount of $100,000 against each defendant.

¶ 23        Initially, we note, to the extent plaintiff's complaint can be interpreted as a *mandamus* claim to compel defendants to enforce the standards that result in an award of money damages, such an award would not be warranted here. A *mandamus* plaintiff is entitled to recover "damages and costs" only if a "judgment is entered in favor of the plaintiff." 735 ILCS 5/14-105 (West 2022). Here, no judgment was entered in favor of plaintiff as to any *mandamus* claim to compel defendants to enforce the standards at the Jail, nor will one be entered due to the mootness of that claim. Absent such a judgment, plaintiff would not be entitled to recover damages. See *Holtz v. Waggoner*, 377 Ill. App. 3d 598, 601 (2007) (holding the plaintiff was not entitled to costs

and damages related to his *mandamus* complaint where the complaint was dismissed as moot, such that no judgment was entered in the plaintiff's favor).

¶ 24 Any potential request for *mandamus* relief aside, we conclude plaintiff failed to state any cognizable claim to warrant monetary damages. Plaintiff's complaint alleged defendants violated (1) "state law" by failing to enforce the standards at the Jail, (2) his "first amendment right by denying him to petition [*sic*] the Government for a redress of grievances," and (3) his right to "equal protection of the laws."

¶ 25 1. *Plaintiff's Claim Defendants Violated "State Law"*

¶ 26 We first consider plaintiff's claim defendants violated "state law" by failing to enforce the standards. We note that plaintiff's complaint does not identify the law he believes was violated. However, construing the *pro se* complaint liberally (see *Turner-El v. West*, 349 Ill. App. 3d 475, 479 (2004)), we interpret the complaint to allege, as plaintiff notes in his brief on appeal, defendants violated section 3-15-2(a) of the Unified Code. 730 ILCS 5/3-15-2(a) (West 2022).

¶ 27 Section 3-15-2(a) of the Unified Code directs DOC to establish "minimum standards for the physical condition" of county jails and for the "treatment of inmates with respect to their health and safety and the security of the community." *Id.* Further, DOC "may inspect each adult facility for compliance with the standards established and the results of such inspection shall be made available by [DOC] for public inspection." *Id.* § 2-15-2(b). If a detention or correctional facility does not comply with the established standards, the director of DOC shall notify the county board and sheriff or corporate authorities of the municipality of such noncompliance. *Id.* Finally, "If the facility is not in compliance with such standards when six months have elapsed from the giving of such notice, the Director of [DOC] *** may petition the appropriate court for an order requiring such facility to comply with the standards established by [DOC] or for other appropriate

- 8 -

relief." *Id.*

¶ 28 Defendants argue plaintiff lacks statutory standing to plead a claim under section 3-15-2 because pursuant to section 3-15-2(b), the director of DOC is the sole entity authorized to enforce the standards. We agree.

¶ 29 Under Illinois law, there is common-law standing, which requires an injury in fact to a legally recognized interest. *Fausett v. Walgreen Co.*, 2025 IL 131444, ¶ 39. There is also statutory standing, which requires certain statutory conditions to be fulfilled before one can sue for legislatively created relief. *Id.* "With statutory standing, the legislature created the right of action and determined who shall sue, and the conditions under which the suit may be brought." (Internal quotation marks omitted.) *Id.* (quoting *People v. Johnson*, 2021 IL 125738, ¶ 31); see *Cebertowicz v. Baldwin*, 2017 IL App (4th) 160535, ¶¶ 19-20 (recognizing a distinction between common-law and statutory standing, such that lack of statutory standing does not necessarily mean a plaintiff lacks common-law standing).

¶ 30 We find *Bocock v. O'Leary*, 2015 IL App (3d) 150096, instructive. In *Bocock*, the plaintiff, a detainee at the Will County Detention Facility, filed a petition for *mandamus* relief against the facility's warden and deputy chief, seeking to compel compliance with numerous standards he claimed the facility violated. *Id.* ¶¶ 3-4. The defendants filed a motion to dismiss, arguing the plaintiff lacked standing because section 3-15-2 provides the director of DOC with the exclusive right to petition a court to enforce the standards. *Id.* ¶ 5. The trial court agreed and granted the defendants' motion to dismiss. *Id.* ¶ 7. The appellate court affirmed the dismissal, concluding "[o]nly the Director of the DOC is statutorily authorized to petition a court to order compliance with the [standards]," and thus, the plaintiff lacked standing to bring his *mandamus* petition. *Id.* ¶ 9. The court reasoned section 3-15-2 was devoid of language granting a "private

right to petition a court to enforce compliance with the [standards]." *Id.* ¶ 11. Instead, the statute explicitly granted only the director of DOC the right to petition a court to remedy a facility's noncompliance with the standards. *Id.* As a result, the court concluded no private cause of action existed for an inmate seeking to remedy a jail's noncompliance with the standards. *Id.* ¶ 10.

¶ 31    Here, like in *Bocock*, plaintiff's claim defendants violated "state law" is premised upon defendants' failure to enforce the standards at the Jail. However, as explained in *Bocock*, section 3-15-2 grants only the director of DOC the right to petition a court to remedy such noncompliance and does not include any language granting a private right of action to jail inmates claiming harm to seek redress as a result of such noncompliance. As a result, plaintiff lacks statutory standing to seek redress—damages or otherwise—under section 3-15-2(b). Accordingly, we conclude the trial court properly granted defendants' motion to dismiss.

¶ 32                              2. *Plaintiff's First Amendment Claim*

¶ 33    Plaintiff's complaint also alleged defendants violated his "first amendment right by denying him to petition [*sic*] the Government for a redress of grievances." The complaint, however, does not specify the facts upon which plaintiff relies to support this claim. Applying a liberal interpretation of the complaint, we note plaintiff maintained he filed grievances relating to the purported violations of the standards he identified and that the Jail failed to provide him with "copies of local decisions." But even liberally interpreting the complaint to have included these facts in support of a claim his first amendment right to petition had been violated, plaintiff simply alleges insufficient facts to support any legally cognizable cause of action. See *Turner-El*, 349 Ill. App. 3d at 479 ("Although *pro se* pleadings are normally liberally construed [citation], a liberal construction will not be utilized to remedy the failure of a complaint to plead sufficient facts to establish a cause of action.").

¶ 34        Illinois is a fact-pleading jurisdiction. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). While a plaintiff need not set forth evidence in the complaint, the plaintiff "must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions." *Id.* at 429-30. To survive a motion to dismiss, the plaintiff must have alleged specific facts supporting each element of a cause of action; the trial court will not admit conclusions of law or conclusory allegations unsupported by facts. *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 406 Ill. App. 3d 325, 336 (2010).

¶ 35        Without more than a general claim the Jail failed to provide him with "copies of local decisions" regarding the grievances he filed, we cannot say plaintiff alleged sufficient facts to bring a recognized cause of action. Indeed, plaintiff does not plead any facts establishing how his right to petition the government has been implicated by any perceived deficiency in the prison grievance process or even what injury he has sustained as a result of the grievance process. See *Turner-El*, 349 Ill. App. 3d at 484 (noting the first amendment "does not include a constitutional right to file prison grievances"); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause [(U.S. Const., amend. XIV)]."); see also *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) ("A prisoner asserting a denial of access [to the courts] claim must show an 'actual injury' in the form of interference with a 'nonfrivolous legal claim.' ") (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)); *Hightower v. Butler*, 2021 IL App (5th) 180328-U, ¶ 18 (noting that while the first amendment right to petition the government for a redress of grievances includes the right of access to the courts, to establish such a claim, "the plaintiff must show that he was impeded in his ability to bring a redressable claim to the court").

¶ 36        We acknowledge plaintiff attempted to provide additional detail to support his first

amendment claim in his response to defendants' motion to dismiss, asserting defendants and the Jail hindered his efforts to report violations of the standards by dismissing them "with no or limited investigation" and failing to provide detainees with copies of their grievances. However, "[t]he standard of review on a section 2-615 motion to dismiss clearly limits our review to the face of the complaint." *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 56. As such, we will not fill in all the blanks in a *pro se* complaint. *Turner-El*, 349 Ill. App. 3d at 479. Looking only to plaintiff's complaint, his claim defendants violated his right to petition the government for a redress of grievances amounts to, at best, an unsupported legal conclusion, which is insufficient to establish a cause of action. See *id.* ("[C]onclusions in a complaint, unsupported by facts, will not be accepted by the court as true.").

¶ 37     Accordingly, we conclude the trial court did not err in dismissing plaintiff's complaint.

¶ 38                    3. *Plaintiff's Equal Protection Claim*

¶ 39     Finally, plaintiff's complaint asserted defendants' acts violated his right to equal protection. As with plaintiff's first amendment claim, we conclude he failed to allege sufficient facts to support any legally cognizable cause of action.

¶ 40     Initially, we note the complaint does not specify whether plaintiff's equal protection claim arises under the Illinois Constitution or the United States Constitution. See Ill. Const. 1970, art. 1, § 2; U.S. Const., amend. XIV. However, "[w]hen assessing a claim that someone has been denied the equal protection of the laws, we perform the same analysis, regardless of whether the claim arises under the state or federal constitution." *People v. McCormick*, 332 Ill. App. 3d 491, 495 (2002).

¶ 41     The equal protection clause requires the government to treat "similarly situated"

individuals in a similar manner, unless the government can show an appropriate reason to treat them differently. *People v. Masterson*, 2011 IL 110072, ¶ 24. The applicable level of scrutiny for an equal protection challenge is determined by the nature of the right implicated. *Id.* Strict scrutiny analysis is applied when a "fundamental right or suspect classification based on race or national origin is involved, and requires a showing that the statute is narrowly tailored to serve a compelling state interest." *Id.* When neither a fundamental right nor a suspect classification is implicated, the rational basis standard applies, which requires a determination of "whether the statute bears a rational relationship to a legitimate government purpose." *Id.* Finally, intermediate scrutiny "applies to classifications based on gender, illegitimacy, and content-neutral incidental burdens to speech" and requires a showing that "the statute is substantially related to an important governmental interest." *Id.*

¶ 42        However, as a threshold matter, an equal protection claim "requires a showing that the individual raising it is similarly situated to the comparison group." *Id.* ¶ 25. "In fact, when a party fails to make that showing, his equal protection challenge fails." *Id.*

¶ 43        Here, in raising his equal protection claim, plaintiff's complaint contains no reference to a comparison group, let alone an allegation he is similarly situated to any such group. Like his first amendment claim, plaintiff attempted to provide additional context in his response to defendants' motion to dismiss, asserting inmates at the Jail were treated differently than inmates at the Lake County jail because conditions at the latter facility were better. As explained above, however, our analysis looks only to the face of plaintiff's complaint, and we will not supply missing facts to find a cause of action has been properly presented. *Crossroads Ford*, 406 Ill. App. 3d at 336. When considering only the face of plaintiff's complaint, his claim defendants violated his right to equal protection amounts to no more than an unsupported legal conclusion, which is

insufficient to establish a cause of action. *Turner-El*, 349 Ill. App. 3d at 479.

¶ 44   Accordingly, we conclude the trial court properly granted defendants' motion to dismiss and did not err in dismissing plaintiff's complaint.

¶ 45   III. CONCLUSION

¶ 46   For the reasons stated, we affirm the trial court's judgment.

¶ 47   Affirmed.